# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DELEON TATE,

        Petitioner,

v.                                       Case No. 15-13358

DUNCAN MACLAREN,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Deleon Tate is a state inmate currently incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, serving a sentence for a first-degree felony murder conviction. He has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising four grounds for habeas corpus relief. (Dkt. # 1.) Respondent has filed an answer in opposition arguing the claims are without merit. (Dkt. # 4.) The court will deny the petition.

## I. BACKGROUND

Petitioner's conviction arises from the shooting death of Robert Pippins. Petitioner gave a statement to police admitting that he accompanied his cousin, Artemia Stewart, Michael Hadley, and another man known as Mike to the victim's house on the night of November 19, 1999. Petitioner admitted that he went to the home with the intent to rob the victim, a known drug dealer. Petitioner denied knowing that anyone was carrying a weapon.

Petitioner was charged with first-degree felony murder and armed robbery. He and Hadley were tried together, but before separate juries. Hadley's jury convicted him of first-degree murder, armed robbery, and possession of a firearm during the commission of a felony. Petitioner's jury found him guilty of armed robbery, but could not reach a verdict on the murder charge. Petitioner was retried on the first-degree murder charge and found guilty. On June 15, 2001, he was sentenced to life imprisonment for the murder charge and the armed robbery predicate felony charge was vacated.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising claims that his custodial statement should have been suppressed, that the trial court erred in refusing to rule on the question of voluntariness of the statement, that insufficient evidence supported the convictions, and that the prosecutor engaged in misconduct. The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Tate*, Case No. 23709, 2003 WL 1387085 (Mich. Ct. App. Mar. 18, 2003).

Petitioner sought leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court ordered the case remanded to the trial court for a determination of "whether Tate's typewritten confession was voluntary and therefore admissible." *People v. Tate*, 471 Mich. 959 (Mich. Jan. 21, 2005).

On remand, the trial court held a hearing to determine the voluntariness of Petitioner's statement. The trial court found the statement was voluntary. (*See* Dkt. # 5-35.) Petitioner appealed this decision to the Michigan Court of Appeals, which affirmed

the trial court's ruling. *People v. Tate*, Case No. 294858, 2011 WL 1438227 (Mich. Ct.

App. Apr. 14, 2011). The Michigan Supreme Court denied leave to appeal.

Petitioner then filed a motion for relief from judgment arguing that the prosecutor

improperly advanced competing theories at Petitioner's and Artemia Stewart's trials and

that his appellate attorney was ineffective for failing to raise this claim on direct appeal.

The trial court denied the motion. (*See* Dkt. # 5-42.)  The Michigan Court of Appeals

denied leave to appeal, *People v. Tate*, No. 322970 (Mich. Ct. App. Sept. 4, 2014), as

did the Michigan Supreme Court.  *People v. Tate*, 497 Mich. 1026 (2015).

Petitioner then filed this habeas corpus petition, raising these claims:

I.      Petitioner Tate's constitutional right against compulsory self-incrimination was violated when the court declined to suppress an inauthenticated statement to police that was rendered involuntary by a physical assault, multiple threats, and the promise of release from custody if he talked, thereby denying Petitioner Tate due process.

II.     The evidence at trial was insufficient to support Petitioner Tate's conviction for first degree murder, thereby denying Petitioner Tate due process.

III.    Petitioner Tate was denied a fair trial because the prosecutor engaged in blatant misconduct during closing argument, thereby denying Petitioner Tate due process.

IV.     Petitioner Tate was denied a fair trial because the prosecutor committed an egregious violation of due process by advancing inconsistent aiding and abetting theories in separate trials, by claiming in Petitioner Tate's trial that he aided and abetted in the robbery/murder with knowledge that his codefendant, Ar[tem]ia Stewart, was armed with a weapon during the incident; while advancing a totally different aiding and abetting theory at co-defendant Ar[tem]ia Stewart's separate trial by claiming that co-defendant Ar[tem]ia Stewart provided a weapon to allow Petitioner Tate and others to commit the robbery/murder without Ar[tem]ia Stewart's participation, thereby denying Petitioner Tate due process.

## II. STANDARD

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits[1] in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has ruled on a case with a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

---

[1] The Sixth Circuit recently clarified that a state court's review of a defendant's claims for plain error constitutes an adjudication on the merits triggering the AEDPA's deference to the state court's decision so long as the state court "conducts any reasoned elaboration of an issue under federal law." *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1998 (2018) (citing *Fleming v. Metrish*, 556 F.3d 520, 531 (6th Cir. 2009)).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, a federal court may grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were

adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. DISCUSSION

### A. Admissibility of Custodial Statement

Petitioner's first claim for relief concerns the admissibility of his custodial statement. He claims that the statement he allegedly gave to police investigator Gregory Edwards was not properly authenticated and was rendered involuntary based upon a physical assault, multiple threats, and the promise he would be released from custody if he gave a statement.

Petitioner moved to suppress the statement at trial, and the trial court conducted an evidentiary hearing pursuant to *People v. Walker*, 374 Mich. 331 (1965) (requiring that an evidentiary hearing be conducted when a defendant challenges the admissibility of a confession). Petitioner testified in support of his claim that the statement was involuntary and also testified that the typewritten statement offered by the prosecution was not the statement he signed. The trial court declined to make findings of fact as to voluntariness, instead concluding that the question of the authenticity of the statement was properly left to the jury. (Dkt. # 5-7, Pg. ID 303–05.) On direct appeal, the Michigan Supreme Court remanded the case to the trial court "for a determination, either on the existing record or after an appropriate hearing, whether the defendant's typewritten confession was voluntary and therefore admissible." *Tate*, 471 Mich. at 959.

On remand, the trial court conducted a second *Walker* hearing. Police investigator Gregory Edwards testified that before interrogating Petitioner at police headquarters he advised Petitioner of his rights and Petitioner signed an advice of rights

6

form. (Dkt. # 5-34, Pg. ID 2254–55.) Investigator Edwards typed as Petitioner gave a statement. He gave Petitioner an opportunity to review the statement for accuracy before Petitioner signed it. *Id.* at 2263–64. Petitioner signed the statement without making any corrections. *Id.* at 2266. According to Investigator Edwards' testimony, Petitioner did not ask for an attorney. *Id.* at 2285.

Petitioner testified that Investigator Edwards questioned him three times. *Id.* at 2298–99. Petitioner denied having any knowledge about the murder the first two times Investigator Edwards questioned him, at approximately 9:00 and 11:00 p.m. on November 19, 1999. Investigator Edwards questioned Petitioner a third and final time at approximately 1:30 a.m., on November 20, 1999. Investigator Edwards showed Petitioner a picture of Michael Hadley. Petitioner admitted to knowing Hadley, but denied any knowledge about the victim's murder. *Id.* at 2299–2300. Petitioner testified that four other officers then entered the interrogation room, including Investigator Robert Hughes. Hughes told Petitioner to tell him what he knew and slapped Petitioner in the face with the back of his hand. *Id.* at 2300–01. Hughes then pushed his arm in Petitioner's throat and told Petitioner "he was gonna send me up state to be somebody's bitch if I kept actin' stupid." *Id.* at 2302. Hughes also stated that he knew dope was being sold out of Petitioner's grandmother's house and "he was gonna go in there and take everybody to jail and take her house." *Id.* at 2303. Petitioner testified that he finally told the officers what they wanted to hear even though it was not the truth because he was intimidated by the number of officers in and outside the interrogation room. Petitioner signed his statement without reading it first and testified that he was shown the advice of rights form only after he gave police a statement. *Id.* at 2304–06.

Following the *Walker* hearing, the trial court held that Petitioner's statement was voluntary and authentic. (*See* Dkt. # 5-35, Pg. ID 2368–73.) The trial court found Investigator Edwards' testimony more credible than Petitioner's testimony, including Investigator Edwards' testimony that Petitioner was advised of his rights before he gave his statement and that Petitioner was not threatened or physically assaulted. *Id.* The court held that Petitioner's statement was a product of his own free will and that the statement offered by the prosecution was authentic. *Id.*

The Michigan Court of Appeals also denied this claim, ultimately deferring to the trial court's credibility determination. The Michigan Court of Appeals noted that Petitioner was 20 years old at the time of the interrogation, had completed the eleventh grade, had been arrested on at least ten prior occasions, had not been deprived of food, sleep or medical attention, and that there was no evidence he had been exposed to repeated or prolonged interrogation. *Tate*, 2011 WL 1438227 at *2. The state court of appeals held that the record supported the trial court's credibility determination and found that the trial court properly denied Petitioner's motion to suppress. *Id.*

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163–64 (1986). A confession is considered involuntary if: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Ostrander,* 411 F.3d 684, 696 (6th Cir. 2005) (quoting *United States v. Mahan,* 190 F.3d 416, 422 (6th Cir.1999)).

The decision of the state court to credit the police officer's testimony and not Petitioner's testimony is "presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Ramonez v. Berghuis*, 490 F.3d 482, 490–91 (6th Cir. 2007) (noting that the § 2254(e)(1) standard of review applies to a state court's credibility determinations in the context of a hearing on a motion to suppress a confession). Petitioner, therefore, bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not satisfied this burden. Other than Petitioner's own testimony, which the state court found lacked credibility, there is no evidence that police failed to apprise Petitioner of his rights before taking his statement, or that they threatened or physically assaulted him. Petitioner disagrees with the state court's credibility determination but has not offered any specific evidence in support of his claim. This falls far short of the clear and convincing evidence required to challenge the state court's credibility determination. Considering the totality of these circumstances, the Michigan Court of Appeals' decision that Petitioner's statements were made voluntarily, knowingly, and intelligently was not contrary to or an unreasonable application of federal law.

Finally, Petitioner's claim that the statement was not properly authenticated is not a cognizable habeas corpus claim. *See Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). A "mere error of state law is not a denial of due process." *Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982) (internal quotation omitted). Habeas relief is denied on this claim.

### B. Sufficiency of the Evidence

Petitioner claims that insufficient evidence was presented to support his murder conviction. He argues that he lacked the intent to kill or to do great bodily harm.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, the court's review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)). First, the court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319). Second, if the court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of first-degree felony murder are: (1) the killing of a human being; (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm

would be the probable result; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies enumerated in Mich. Comp. Laws § 750.316(1)(b). *See* Mich. Comp. Laws § 750.316(1); *People v. Smith*, 733 N.W.2d 351, 365 (Mich. 2007). Armed robbery is one of the enumerated felonies. *See* Mich. Comp. Laws § 750.316(1)(b); *People v. Akins*, 675 N.W.2d 863, 869 (Mich. Ct. App. 2003) ("[A]rmed robbery [ ] is a well-established predicate felony under the felony-murder statute."). "To prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted in the commission of the killing of a human being, (2) with intent to kill, to do great bodily harm, or create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony." *See People v. Riley*, 659 N.W.2d 135, 141 (Mich. 2003).

The Michigan Court of Appeals held that sufficient evidence was presented to sustain Petitioner's convictions:

> Here, defendant admitted in both his statement to the police and his trial testimony that he joined his cousin, Artemia Stewart, and two others in the robbery of a drug dealer at his drug house. Although he denied having knowledge that Stewart was armed, the jury reasonably could have disbelieved this claim, especially considering defendant's admission that drug dealers are often armed with weapons. Additionally, defendant admitted that he and the others would have beaten Stewart into resistance if he did not submit to their demands for money. The jury could have inferred from this evidence that defendant intentionally participated in a robbery, knowing that another robber was armed, and knowing that the group was prepared to inflict great bodily harm. Consequently, there was sufficient evidence to support defendant's felony murder conviction.

*Tate*, 2003 WL 1387085 at *3.

Petitioner's objections to the Michigan Court of Appeals' decision, which focus on the brevity of the decision, are meritless. Petitioner argues that the Michigan Court of Appeals' decision lacked analysis, relied on boilerplate language, was too brief, and failed to specifically cite *Jackson*. The AEDPA does not require a state appellate court to state its reasons for denying a claim. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). A state court "need not cite or even be aware of [relevant Supreme Court] cases." *Id.* In any event, the Michigan Court of Appeals clearly applied the *Jackson* standard and relied upon a Michigan Supreme Court case which cited and discussed the *Jackson* standard. *See People v. Nowack*, 614 N.W.2d 78 (Mich. 2000). On habeas review, a petitioner must show that there is "no reasonable basis" for the state court to deny relief. *Id.* Petitioner has not done so. His challenge to the quality and content of the state court's opinion fails.

On habeas review, this court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326). The decision of the Michigan Court of Appeals easily passes scrutiny under the deferential AEDPA standard, as the appellate court applied the correct constitutional test, relied on facts amply supported in the record, and did not unreasonably apply clearly established constitutional law.

## C. Prosecutorial Misconduct

Petitioner raises two claims of prosecutorial misconduct. He argues that during closing argument, the prosecutor improperly referenced prior robberies Petitioner allegedly committed in order to question Petitioner's credibility and improperly used a civic duty argument to persuade the jury to convict.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *See Parker v. Matthews*, 567 U.S. 37, 46 (2012). *Darden* held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To satisfy this standard, the conduct must be both improper and flagrant." *United States v. Farah*, 766 F.3d 599, 615 (6th Cir. 2014).

"[A] prosecutor cannot make statements 'calculated to incite the passions and prejudices of the jurors.'" *Bates v. Bell*, 402 F.3d 635, 642 (6th Cir. 2005) (quoting *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000)). Additionally, "[s]tatements that exhort the jury to 'do its job' are improper." *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002) (citing *United States v. Young*, 470 U.S. 1, 18 (1985)). "To call on a jury's sense of civic duty—to imply that it is their duty to convict—is improper." *United States v. Ward*, 728 F. App'x 490, 495 (6th Cir. 2018). However, a prosecutor may appeal to the jurors' sense of justice. *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009).

If the court concludes that the prosecutor's statements were improper, it proceeds to consider four factors to determine whether the prosecutor's conduct was flagrant: "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; (4) the total strength of the evidence against the defendant." *United States v. Farah*, 766 F.3d 599, 615 (6th Cir. 2014) (quoting *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir.2008)).

Even if found to be improper and flagrant, to constitute a denial of due process, the misconduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant." *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997)). Habeas relief based on prosecutorial misconduct is warranted "only if the [prosecutor's] statements were so flagrant as to render the entire trial fundamentally unfair." *Roby v. Burt*, No. 17-2043, 2018 WL 1176512, at *3 (6th Cir. Feb. 14, 2018) (quoting *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). This is a high bar because "habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal citation and quotation omitted).

In general, AEDPA's deferential standard of review presumptively applies even where the state court deciding a claim "issues an opinion that . . . does not expressly address the federal claim in question." *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

"[T]he federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Id.* at 293.

However, a state court's plain-error analysis amounts to "an adjudication on the merits," 28 U.S.C. § 2254(d), entitled to AEDPA deference only when the state court's plain-error analysis "conducts any reasoned elaboration of an issue under federal law." *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017) (quoting *Fleming v. Metrish*, 556 F.3d 520, 531 (6th Cir. 2009)). In those instances, this court must apply AEDPA deference, i.e., must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Stewart v. Trierweiler,* 867 F.3d 633, 640 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1998 (2018) (quoting *Harrington*, 562 U.S. at 103). If the state court does not address the merits of a claim, no AEDPA deference is required. *See English v. Berghuis*, __ F.3d __, 2018 WL 3978206, *4 (6th Cir. Aug. 22, 2018) (citing *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2012)). The Michigan Court of Appeals' decision regarding Petitioner's first prosecutorial misconduct claim is entitled to AEDPA deference, but its decision regarding his second claim may not be.

Petitioner first argues that the prosecutor committed misconduct in his closing argument by implying that Petitioner's experience with drug trafficking and potential prior robberies meant that Petitioner knew someone in his group had a gun when the group entered the drug house. Petitioner presented this claim as a denial of his federal constitutional right to a fair trial under the Due Process Clause in his state court briefing. (*See* Dkt. # 5-31, Pg. ID 2065.) The Michigan Court of Appeals recognized that

Petitioner had preserved this claim for appellate review. *People v. Tate*, No. 237039, 2003 WL 1387085, at *3 (Mich. Ct. App. Mar. 18, 2003). Because the state court did not review this claim under the more onerous plain error standard, this court "must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Johnson*, 568 U.S. at 293. True, the state court did not reference the Constitution or federal cases when reviewing this claim, but AEDPA's deferential standard of review presumptively applies even where the state court deciding a claim "issues an opinion that . . . does not expressly address the federal claim in question." *Johnson*, 568 U.S. at 292. Therefore, for Petitioner's first claim of prosecutorial misconduct, where a plain error review was not conducted, the state court's decision is entitled to AEDPA deference. The court now reviews that decision.

The Michigan Court of Appeals held that the prosecutor's reference to other robberies Petitioner may have committed with Stewart was drawn from the evidence and relevant to the case. *Tate*, 2003 WL 1387085 at *3. As the state court explained, "[a] key factual issue in this case" was what Petitioner knew about Stewart's intent when he joined Stewart in the robbery. *Id.* "The prosecutor was inferring from the evidence that defendant understood exactly what Stewart had in mind; therefore, the remark was relevant to the evidence introduced at trial." *Id.*

The trial record supports the Michigan Court of Appeals' interpretation of the prosecutor's reference to prior armed robberies and its relevance to this case. Petitioner's defense centered on the assertion that he did not know that Stewart or anyone intended to bring a gun to the robbery. The prosecution was entitled to rebut this defense and challenge Petitioner's credibility through evidence of his prior

16

experiences showing his knowledge. Petitioner fails to demonstrate that the prosecutor's comment was improper. Moreover, Petitioner has not shown that the state court's opinion was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Stewart*, 867 F.3d at 640.

Petitioner next argues that the prosecutor committed misconduct by appealing to the jury's sense of civic duty. The Michigan Court of Appeals found that this argument was not preserved for appellate review and reviewed the claim for plain error. *Tate*, 2003 WL 1387085, at *3. Therefore, this court gives the state court's decision AEDPA deference only if it contains a "reasoned elaboration of an issue under federal law." *Stewart*, 867 F.3d at 638. In its analysis, the state court relied upon only Michigan law governing prosecutorial misconduct; however, the Michigan standard is substantively the same as the federal standard announced in *Darden*. Therefore, the state court made the necessary findings required by *Darden* to determine whether the prosecutor had committed misconduct in violation of the federal Constitution. But whether the state court's analysis amounts to a "reasoned elaboration of an issue under federal law" and thus is entitled to AEDPA deference is unclear. *Stewart*, 867 F.3d at 638. Regardless, even if the Michigan Court of Appeals' adjudication of this claim were not considered to be "on the merits," and thus not entitled to AEDPA deference, habeas relief is not warranted under the more lenient de novo standard of review. The court now reviews the Michigan Court of Appeals' decision.

Petitioner objects to these portions of the prosecutor's closing and rebuttal arguments:

You're here to do your duties. You're here to find whether . . . [Petitioner] assisted, whether he assisted in any way. Whether he did it prior to, by encouraging, or whether he acted out and he did it. . . . Don't let him walk away. Do your duty. Do your duty and allow that family to have closure.

. . .

Do your duty, go in there and find this man guilty of felony murder.

(Dkt. # 5-25, Pg. ID 1930, 1951.) The Michigan Court of Appeals held that the prosecutor's "duty" arguments were not improper because, considered in their entirety, they urged the jury to convict based upon the evidence. *Tate*, 2003 WL 1387085 at *3.

Upon a fresh review, this court concludes that the prosecutor's language is not inflammatory nor does it appear intended to incite passions or prejudices; however, it does toe the line of an improper civil duty argument. The statements Defendant identifies, when viewed in isolation, are of the type that "exhort the jury to do its job," *Modena*, 302 F.3d at 634, and imply that said job is a "duty to convict." *Ward*, 728 F. App'x at 495. The Constitution does not permit, and the court does not condone, this type of improper legal argument. *See Viereck v. United States*, 318 U.S. 236, 247 n. 3 (1943) (holding that prosecutorial statements urging the jury that they "have a duty to perform here" are irrelevant and improper). However, a brief improper statement standing alone does not entitle Petitioner to habeas relief. The "conduct must be both improper and flagrant," *Farah*, 766 F.3d at 615, "so flagrant as to render the entire trial fundamentally unfair." *Roby*, No. 17-2043, 2018 WL 1176512, at *3.

Here, the prosecutor's argument, "viewed in context," asked the jury to convict based upon the evidence. *See United States v. Young*, 470 U.S. 1, 11 (1985) (holding that a prosecutor's statements or conduct must be viewed in context because "only by so doing can it be determined whether the prosecutor's conduct affected the fairness of

18

the trial"). The prosecutor clarified to the jury that "the only thing you have to decide is if [Petitioner's co-conspirator] had the intent and whether [Petitioner] aided and abetted . . . ." (Dkt. # 5-25, Pg. ID 1931.) In rebuttal the prosecutor stated "I have to prove that someone had [intent] and that it happened and that [Petitioner] aided and he abetted and he knew that they had an intent." (*Id.* at Pg. ID 1945.)

Further, the trial court instructed the jury to base their decision only on the evidence and the law, not on their sympathies or prejudices. (*Id.* at Pg. ID 1952); *See Cameron v. Pitcher*, 2001 WL 85893, *10 (E.D. Mich. Jan. 4, 2001) (holding that jury instruction advising jurors they were required to decide facts on basis of properly admitted evidence mitigated the prosecutor's civic duty argument). The court also provided an instruction indicating that "nothing the lawyers said or asked counted as evidence." *Stewart*, 867 F.3d at 640.

Finally, the prosecutor's statement was "an isolated statement at the end of the prosecutor's closing argument. And, as noted above, [*see* Section B. Sufficiency of the Evidence], there was ample evidence of [Defendant]'s guilt." *Ward*, 728 F. App'x at 496.

The court finds that the portions of the prosecutor's argument that addressed a generalized purported "duty to convict" (as distinguished from the prosecutor's focus on the evidence in properly urging a duty "to find *whether* . . . [Petitioner] assisted" (Dkt. # 5-25, Pg. ID 1951)) did not rise to the level of prosecutorial misconduct in violation of the constitutional—it did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

### D. Inconsistent Prosecution Theories

In his final claim, Petitioner argues that the prosecution's presentation of inconsistent theories at Artemia Stewart's trial and his trial as to the identity of the person who supplied the gun and the person who possessed the gun violated his rights under the Due Process Clause. He also alleges that in advancing these competing theories, the prosecutor knowingly presented false testimony.

Petitioner's due process claim fails because he has not demonstrated that the prosecution presented inconsistent theories as the basis for the prosecutions of Stewart and himself. Petitioner and Stewart were each convicted under an aiding and abetting theory. At Petitioner's trial, the prosecutor argued that Petitioner knew that at least one of the men with whom he entered Pippens' house possessed a gun. At Stewart's trial, the prosecutor argued that Stewart supplied a weapon to one of the robbers, knowing that they intended to commit a robbery. Stewart admitted to supplying the weapon knowing that Petitioner and two other men intended to commit a robbery, but denied knowing that they intended to shoot the victim. At neither trial did the prosecution need to prove the identity of the shooter because each man was convicted on an aiding and abetting theory. Petitioner has not shown that the theories presented in either case were inconsistent with one another. Although Stewart maintained at his trial that he was not present during the robbery, his presence was not fundamental to a determination of the weight of the evidence presented against Petitioner or to the ultimate determination of Petitioner's guilt or innocence. The prosecution consistently argued that Petitioner was present during the robbery and knew that at least one of his codefendants was armed. This was not at odds with the theory advanced in Stewart's trial that he supplied the firearm used in the robbery.

Petitioner also has failed to establish that the prosecution knowingly presented false evidence. The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citations and internal quotations omitted). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prove this claim, a defendant must show that: (1) the evidence the prosecution presented was false; (2) the prosecution knew it was false; and (3) the false evidence was material. *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir.1992). As discussed, Petitioner has not shown that the alleged false evidence—purportedly inconsistent theories regarding Stewart's presence at the robbery and the identity of the shooter—was material to the jury's finding of guilt in Petitioner's trial. Petitioner fails to establish that any specific testimony offered at Petitioner's trial was false or that the prosecutor *knew* any particular testimony was false.

## IV. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). The court concludes that reasonable jurists would not debate

the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the court will deny a certificate of appealability.

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus (Dkt. # 1) is DENIED and a certificate of appealability is DENIED.

> S/Robert H. Cleland
> ROBERT H. CLELAND
> UNITED STATES DISTRICT JUDGE

Dated: September 20, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 20, 2018, by electronic and/or ordinary mail.

> S/Lisa Wagner
> Case Manager and Deputy Clerk
> (313) 234-5522